IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHANE HARRISS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 22-cv-2935-SMY |
| | ) |
| CITY OF CARBONDALE | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Shane Harriss is a former employee of Defendant City of Carbondale. He filed the instant lawsuit against the City asserting violations of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*., the Emergency Use Authorization Act, 21 U.S.C. § 360BBB-3, *et seq*., and the due process clause. The City moves for summary judgment (Doc. 21), which Harriss opposes (Doc. 22). For the following reasons, the motion is **GRANTED**.

### Factual Background

Construed in the light most favorable to Plaintiff, the evidence and reasonable inferences establish the following facts relevant to the pending summary judgment motion: Harriss was a dispatcher for the City of Carbondale from 2015 until December 2021 (Doc. 21-2, pp. 15-16). In response to the COVID pandemic, Carbondale's City Council implemented a city-wide vaccination policy, which became effective on September 27, 2021 (Doc. 21-3; Doc. 21-4). The policy required all employees to received vaccinations against the virus and included the following medical exemption (Doc. 21-3, p. 4):

> "An employee may be entitled to an exemption from the mandatory vaccination requirements based upon an [ADA]-recognized disability that prevents an employee from receiving the COVID-19 vaccine" … "[i]f an employee has a

reasonable belief that the employee has a medical condition that creates a real danger of serious illness or death, the employee may also be exempt from the mandatory vaccination requirement." (Doc. 21-6, ¶ 10).

The policy required any employee requesting a medical exemption "to provide sufficient reasoning from a licensed medical provider validating the contraindication." Specifically, if a doctor, who was a licensed practitioner, signed a letter stating that there was a contraindication to the vaccination which the person had, and it met one of the contraindications under the Center for Disease Control ("CDC") guidelines, or the employee provided supplemental documentation indicating there was a possible contraindication, the medical exemption would be granted (Doc. 21-7).

Employees who did not comply with the vaccination policy were placed on unpaid administrative leave for up to 80 hours or until the employee came into compliance with the vaccination policy. Employees who remained non-compliant following the period of administrative leave were subject to termination of employment (Doc. 21-6, ¶ 13).

Harriss' primary care physician during the relevant period was Dr. Eric Graham (Doc. 21-2, pp. 27-28). He saw Dr. Graham for annual checkups, but was not treating with Dr. Graham for any ongoing medical conditions at the time. *Id.* Harriss requested a medical exemption on October 28, 2021. He included a September 9, 2021, letter from Dr. Graham who stated:

> I saw Shane in my office today. He brought it to my attention that he is being "forced" to get a COVID-19 vaccine. Shane has some health issues and past medical concerns that could put him at significant risk of adverse event, worse morbidity, or even mortality if he were to receive the vaccine. I am recommending that Shane not get the vaccine at this time. I am recommending we wait until we have some more long-term data on the vaccines. I would strongly recommend that you reconsider "forcing" Shane to get the vaccine.

(Doc. 21-6, ¶ 15).

On October 29, 2021, the City notified Harriss that his request was insufficient because it did not reference one of the known contraindications to receiving the COVID-19 vaccine (Doc.

21-6). The Notice informed Harriss that he would be given a temporary exemption to obtain sufficient documentation regarding what contraindications to the vaccine required his need for a medical exemption. *Id.* Harriss was directed to submit the requisite information to Human Resources by November 5, 2021. *Id.* The Notice further informed Harriss that failure to submit the completed documentation would result in the denial of his request. *Id.* Harriss did not provide the requested information to the City in accordance with the Notice. *Id.* The City denied Harriss request for medical exemption by letter dated November 5, 2021:

> "After a final review..., your request is denied" based on the findings that the "request is not based upon any known contradiction [sic] to any of the COVID-19 vaccines" and the "request and explanation from [Harris's] medical provider makes it clear that the rational[e] is based upon the mandate from your employer and not due to any known medical condition." (Doc. 21-6).

After receiving the letter, Harriss returned to Dr. Graham to discuss the denial (Doc. 21-2, p. 56). Dr. Graham did not tell him he had a medical condition which prevented him from taking the COVID-19 vaccination (Doc. 21-2, pp. 55-56). Harriss never told anyone with the City he had a medical condition which would prevent him from receiving the COVID-19 vaccination. *Id.* at pp. 53-54.

On November 22, 2021, the City notified Harriss of his non-compliance with the mandatory vaccination policy and placed him on administrative leave for up to two weeks (Doc. 21-6). In accordance with the vaccination policy, the City sent Harriss a Notice of Termination on December 8, 2021, terminating his employment because he had not complied with the policy by the time he exhausted his administrative leave, which began November 22, 2021. *Id.*

Dispatchers at the Carbondale Police Department are subject to a collective bargaining agreement (Doc. 21-7). The City and the Union held impact bargaining talks, but the Union did not challenge the policy nor grieve the adoption of the Ordinance as it applied to its members.

*Id.* The implementation of the vaccination policy was within the bounds of the "Article 5 Management Rights" under the Collective Bargaining Agreement. *Id.*

Pursuant to the Collective Bargaining Agreement, an arbitration was conducted on October 13, 2022 (Doc. 21-8). The arbitrator found that the City sustained its burden of proof that just cause existed to terminate Harriss for violation of the City's vaccination policy and that the penalty of discharge was reasonable. *Id.*

## Discussion

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue as to any material fact – that is where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986). If the evidence is merely colorable or is not sufficiently probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986). Any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004).

### Americans with Disabilities Act (Count 1)

To maintain a claim under the Americans with Disabilities Act, a plaintiff must establish that he "is disabled within the meaning of the Act, is nevertheless qualified to perform the essential functions of the job either with or without reasonable accommodation, and has suffered an adverse employment action because of his disability." *Tate v. SCR Medical Transp.*, 809 F.3d 343, 345 (7th Cir. 2015). The ADA defines "disability" in three ways: (A) a physical or mental impairment that substantially limits one or more major life activities of [plaintiff]; (B) a record of

such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1)(A)–(C).

Harriss asserts that his left leg is partially and permanently paralyzed, and he suffers from some nerve damage. He argues that he is contraindicated for the COVID-19 vaccine because of the high likelihood that the vaccine will cause complications with his existing physical impairments. But the evidence does not support his claim that he suffers from a qualifying disability under the ADA. Harriss' condition does not substantially limit one or more major life activities. And he testified that he does not take any medications for his condition, was not treating with any healthcare provider for his condition, and only saw Dr. Graham for his yearly exam. There is also no evidence of a record of his condition with the City or that the City regarded him as having an impairment.

Even if Harriss could establish that he was disabled under the ADA, his claim still fails because he cannot show that his requested accommodation of a medical exemption from the vaccine is reasonable. "To the extent an ADA discrimination claim centers on a request for a workplace accommodation, there must be a causal connection between the major life activity that is limited and the accommodation sought. *See Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 785 (7th Cir. 2007). In vaccine exemption cases, courts look to whether the CDC has recognized the alleged disability as a contraindication for the vaccine when determining whether the requested accommodation is reasonable. *See Jacobs v. Mercy Health*, No. 4:22-cv-1204-AGF, 2024 WL 894861, at *10 (E.D. Mo. Mar. 1, 2024) (collecting cases).

Here, there is nothing in the record supporting Harriss' claim that his condition is contraindicated for the vaccine. Dr. Graham never advised Harriss that he suffered from a medical condition which would prevent him from taking the COVID-19 vaccination. Nor is

there evidence supporting his contention that his partial paralysis is a CDC-recognized contraindication to the COVID-19 vaccine.

Accordingly, the City is entitled to judgment as a matter of law on Harriss' ADA claim.

### Emergency Use Authorization Act (Count 2)

Harriss also brings a claim under a provision of the Federal Food, Drug, and Cosmetic Act ("FDCA") known as the Emergency Use Authorization Act ("EUA"). *See* 21 U.S.C. § 360bbb-3. Harris argues that in 2021, the only vaccines available to the public were the EUA-approved Pfizer-BioNtech and that he had the right to refuse administration of a non-FDA approved vaccine.

Courts have consistently held that the EUA provides no private right of action because it is a subpart of the FDCA subject to enforcement "by and in the name of the United States." 21 U.S.C. § 337(a), (b); s*ee Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 817 (1986) (determining no federal subject matter jurisdiction over FDCA claim as "Congress has determined that there should be no private, federal cause of action for the violation ..."); *Jackson v. Methodist Health Servs. Corp.*, No. 22-cv-1307, 2023 WL 2486599, at *5 (C.D. Ill. Feb. 10, 2023); *Kiss v. Best Buy Stores*, No. 3:22-cv-00281-SB, 2022 WL 17480936, at *8 (D. Or. Dec. 6, 2022), *aff'd sub nom. Kiss v. Best Buy Stores, Ltd. P'ship*, No. 23-35004, 2023 WL 8621972 (9th Cir. Dec. 13, 2023) (collecting cases). Therefore, the City is entitled to summary judgment on Count 2 as well.

### Due Process (Count 3)

An employee with a constitutionally protected property interest in his employment has a right to a pre-termination hearing. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). The scope of this right is "dependent upon the adequacy of post-termination remedies."

*Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 536 (7th Cir. 2008). "[W]hen adequate post-termination proceedings exist, a pre-termination hearing need only provide 'an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.' " *Id.* (quoting *Loudermill*, 470 U.S. at 545–46). A pre-termination hearing requires, at minimum: "(1) oral or written notice of the charges; (2) an explanation of the employer's evidence; and (3) an opportunity for the employee to tell his or her side of the story." *Head v. Chi. Sch. Reform Bd. of Trs.*, 225 F.3d 794, 804 (7th Cir. 2000) (citing *Loudermill*, 470 U.S. at 546); *see also Carmody v. Bd. of Trs. of Univ. of Ill.*, 747 F.3d 470, 474–75 (7th Cir. 2014).

Harriss received more than adequate pre-termination notice. He was notified that employees who did not comply with the policy would be placed on unpaid administrative leave and those who remain non-compliant following the period of administrative leave would be subject to termination of employment. He was also notified by the City that his request for a medical exemption was insufficient and was given additional time to submit proper medical documentation. Following final review of his request for medical exemption, the City notified Harriss of its denial and placed him on administrative leave. The City eventually terminated Harriss and advised him the termination was due to his failure to comply with the policy.

Additionally, the collective bargaining agreement that governed Harriss' employment included grievance and arbitration procedures for contesting disciplinary decisions. Such procedures "can (and typically do) satisfy the requirements of post-deprivation due process. *Calderone v. City of Chi.*, 979 F.3d 1156, 1166 (7th Cir. 2020) (quoting *Chaney v. Suburban Bus Div. of Reg'l Transp. Auth.*, 52 F.3d 623, 630 (7th Cir. 1995)).

On this record the City is entitled to judgment as a matter of law as to Harriss' due process claim.

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 21) is **GRANTED**. As no claims remain, the Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

**DATED:** May 21, 2024

**STACI M. YANDLE**
**United States District Judge**